IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

| | |
|---|---|
| RYAN GOODACRE, | Case Number: 07-02212-jtg |
| | Chapter 7 |
| Debtor, | Hon. John T. Gregg |

_____/

RYAN LANCASTER,
FKA RYAN GOODACRE,

      Plaintiff,

  vs.    Adv. Proc. No. 16-80315-jtg

EDUCATIONAL FINANCIAL SERVICES, A
DIVISION OF WELLS FARGO BANK, N.A.,

      Defendant.

_____/

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Ryan Lancaster ("Lancaster" or "Plaintiff"), by and through undersigned counsel, files this Second Amended Complaint against Defendant Educational Finances Services, a Division of Wells Fargo, N.A. ("Wells Fargo") and on personal knowledge as to those matters within his capacity, and information and belief as to all other matters, as follows:

## I.
## PRELIMINARY STATEMENT

1.    Not all student loans are presumptively non-dischargeable in bankruptcy. In fact, the term "student loan" appears nowhere in section 523(a)(8). Instead, section 523(a)(8) makes certain educational debts presumptively non-dischargeable, including government issued educational loans, defaulted conditional government grants and scholarships, certain loans from non-profit institutions, and private education loans that are qualified education loans under the tax code. Section 523(a)(8) does not except from discharge a host of other types of traditional private,

1

credit-based loans couched as "student loans" by for-profit lenders, including loans for K-12 programs, loans made to students at unaccredited trade schools, loans made for alcohol and drug rehab, and loans made in excess of the "cost of attendance." This is reinforced by the plain language of the discharge order, which states that debts for "most student loans" are non-dischargeable. If debts for "all student loans" are presumptively non-dischargeable, then more than 10 million discharge orders have been issued with an erroneous legal conclusion since 2005.

## II.
## JURISDICTION AND VENUE

2. This Adversary Proceeding is brought under Case Number 07-02212-jtg.

3. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding and involve questions of federal law.

4. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601, 15 U.S.C. § 1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

5. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## III.
## PARTIES

6. Plaintiff Ryan Lancaster (f/k/a Ryan Goodacre) is an individual consumer who at all relevant times was a resident of Michigan.

7. Defendant Educational Financial Services, A Division of Wells Fargo, N.A. is a business that regularly conducts commercial activity in this district and can be served at P.O. Box

5156, Sioux Falls, South Dakota, 57117. At all relevant times, Defendant engaged in lending activities to individual consumers like the Plaintiff throughout the State of Michigan.

## IV.
## FACTUAL ALLEGATIONS

**A.** **Background of Section 523(a)(8) Of The Bankruptcy Code**

8. 11 U.S.C. 523(a)(8) renders three types of educational debts presumptively non-dischargeable:

> **(8)** unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> **(A)(i)** an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

9. Subsection 523(a)(8)(A)(i) covers loans touched in anyway by the federal government, and certain non-profit educational loans.

10. Subsection 523(a)(8)(A)(ii) covers certain defaulted conditional educational grants made by the federal government and certain non-profit institutions.

11. Subsection 523(a)(8)(B) covers certain private education loans that are qualified under the tax code. In order to determine whether or not a private student loan to an individual is a "qualified education loan," one must turn to section 221(d)(1) of the Internal Revenue Code of

1986. Fortunately for creditors and debtors alike, Section 221(d)(1) provides a clean, concise definition of what a "qualified education loan" actually is. Section 221(d)(1) states.

> (d) Definitions For purposes of this section—
>
> (1) Qualified Education Loan. The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses—
>
>     (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
>     (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
>     (C) which are attributable to education furnished during a period during which the recipient was an eligible student.
>
> Such term includes indebtedness used to refinance indebtedness which qualifies as a qualified education loan. The term "qualified education loan" shall not include any indebtedness owed to a person who is related (within the meaning of section 267(b) or 707(b)(1)) to the taxpayer or to any person by reason of a loan under any qualified employer plan (as defined in section 72(p)(4)) or under any contract referred to in section 72(p)(5).

12.     A plain reading of Section 221(d)(1) quickly reveals that a "qualified education loan" means a loan incurred "solely to pay qualified higher education expenses."

13.     Once again, Congress provided a clean, concise definition of what "qualified higher education expenses" actually are. In reading only one paragraph down, Section 221(d)(2) states:

> (2) Qualified Higher Education Expenses. The term "qualified higher education expenses" means the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution, reduced by the sum of—
>
>     (A) the amount excluded from gross income under section 127, 135, 529, or 530 by reason of such expenses, and
>
>     (B) the amount of any scholarship, allowance, or payment described in section 25A(g)(2).
>
> For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by section 25A(f)(2), except that

4

such term shall also include an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training.

14. A plain reading of Section 221(d)(2) quickly reveals that a "qualified education expenses" is limited to (i) the "cost of attendance" (subject to certain applicable reductions), (ii) at an eligible educational institution.

15. When read together, it becomes clear that a private loan – even if couched as a student loan by for-profit lenders – must be made within the "cost of attendance" at an "eligible education institution" to enjoy the self-executing, presumptively non-dischargeable status that 523(a)(8) affords to certain lenders with only certain types of student loans.

16. Due to the self-executing nature of 523(a)(8), a creditor is not required to file an adversary proceeding under Rule 4007 to seek a dischargeability determination on student loans that fall squarely within the scope of 523(a)(8) during the pendency of the bankruptcy.

17. However, the failure to seek a discharge determination during the pendency of the bankruptcy does not alter the fact that the debt is or is not discharged upon entry of the discharge order. It merely avoids a judicial declaration of that fact at the time. *In re Haroon*, 313 B.R. 686 (Bankr.E.D.Va.2004).

18. Under Rule 4007(a), it is clear that a debtor or a creditor may file a complaint to obtain a determination of the dischargeability of any debt. Under 4007(b), it is also clear that a complaint to obtain a determination of the dischargeability of a student loan debt can ***be filed at any time***.

    **B.**     **Plaintiff's Factual and Procedural History**

        **i.**     **Plaintiff Borrows $15,000 in Private, Unsecured Direct-to-Consumer Loans that Wells Fargo Marketed as "Student Loans".**

19. In the early 2000s, the Plaintiff attended an online educational program at Capella University – a for-profit institution. Capella University's "cost of attendance" as reported to the US Department of Education during the 2004-05 academic year was $15,450. *See*, Exhibit A.

20. For the 2004-05 academic term, Plaintiff borrowed $10,500 from the federal government in federal student loans on May 17, 2004 for the academic term covering July 5, 2004 through June 24, 2005. *See*, Exhibit B.[1]

21. The Plaintiff did not receive any scholarships, stipends, or grants to attending Capella University. As a result, the Plaintiff maximum the Plaintiff would have needed to borrow would have been $4,950 after May 17, 2004 to pay the full "cost of attendance" for the online program at Capella University for the 2004-05 academic year.

22. Thereafter, Wells Fargo – a for-profit lender not affiliated with any non-profit or government institution – solicited the Plaintiff to take out additional private, unsecured loans with it outside of the financial aid office.

23. Based on these solicitations, the Plaintiff applied to borrow $15,000 from Wells Fargo in the form of two private, non-certified, non-qualified, credit-based direct-to-consumer loans (each, a "Loan" and collectively, the "Loans").

24. The Loans were not insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution.

25. Further, as they were credit-based loans, the Loans were made by Wells Fargo with an intent on maximizing the profit that they could reap from the Plaintiff, as opposed to relaxed lending standards offered by government or non-profit lenders to further their mission of encouraging higher education.

---

[1] *See* Exhibits, highlighted portions at 56-60.

26.     In connection with the application process, the Plaintiff disclosed to Wells Fargo the institution that he intended to attend (which was online instruction offered by a school in Minnesota), the academic year (2004-05), and his address while at school (the Plaintiff lived at home in Michigan with family). As a result, Wells Fargo was placed on notice of the "cost of attendance" for a student (residing on or off campus) who sought to attend Capella University, as it was publicly available and published by the Department of Education for the 2004-05 academic year.

27.     Upon information and belief, Wells Fargo reviewed the IPEDS data for Capella University along with the Plaintiff's application prior to approving his applications for the Loans.

28.     In addition, given that the Loans were credit-based, upon information and belief, Wells Fargo's underwriting process would have reviewed the Plaintiff's credit report – which would have revealed that he had already taken out substantial federal student loans prior to applying for the Loans with Wells Fargo.

29.     These Loans were not made through the school, certified by the school, approved by the school, nor did they have anything to do with Plaintiff's schooling. In effect, the Loans were not "student loans" as contemplated by 523(a)(8) – as they were simply private, credit-based loans made to a student by a for-profit lender that was not made, insured or guaranteed by a governmental unit, or made under a program funded in whole or in part by a government unit or nonprofit institution.

30.     In other words, the Loans were no different in nature than any other unsecured, private debt that a college student might take out – such as a credit card. And as stated below, the Loans were made by Defendant (a for-profit lender) and exceeded the stated "cost of attendance"

at Capella University online by $10,050 – and were therefore not "qualified education loans" as contemplated by Section 523(a)(8).

31.     The first Loan was originated on October 15, 2004 for $5,000, which carried an interest rate of 12.02% ("Loan No. 1"). *See*, Exhibit C.

32.     If you add $10,500 (total Federal loans originated in May 2004) plus the private $5,000 loan (i.e. the first Wells Fargo loan originated on October 15, 2004), the sum is $15,500.

33.     $15,500 was $50 more than the full "cost of attendance" of $15,450 to attend Capella University during the 2004-05 academic term.

34.     Accordingly, when combined with the previously originated federal loans, Loan No. 1 exceeded the stated "cost of attendance" as reported to the Department of Education by $50.

35.     Therefore, Loan No. 1 was a "mixed-use" loan under the Internal Revenue Code, and is and was not a "qualified education loan" as defined in 523(a)(8)(B) and Section 221(d)(1), as it was not debt that was incurred by the Plaintiff *solely* for "qualified educational expenses" as defined in Section 221(d)(2). As a result of not being a "qualified education loan", Loan No. 1 enjoyed no protection from discharge in bankruptcy under Section 523(a)(8).

36.     The second Loan was originated several days after the first Wells Fargo loan on October 22, 2004 for $10,000, which carried an interest rate of 11.756% ("Loan No. 2"). *See*, Exhibit D.

37.     If you add $15,500 (the $10,500 of Federal loans originated in May 2004, plus the $5,000 first private Wells Fargo loan) plus $10,000 (the second Wells Fargo loan), the sum is $25,500.

38.     $25,500 is $10,050 more than the stated "cost of attendance" of $15,450 to attend Capella University during the 2004-05 academic term.

39. Accordingly, the entire Loan No. 2 exceeded the stated "cost of attendance" as reported to the Department of Education.

40. Therefore, Loan No. 2 was not a "qualified education loan" as defined in 523(a)(8)(B) and Section 221(d)(1), as it was not debt that was incurred by the Plaintiff *solely* for "qualified educational expenses" as defined in Section 221(d)(2). As a result of not being a "qualified education loan", Loan No. 2 enjoyed no protection from discharge in bankruptcy under Section 523(a)(8).

41. As one of the largest and most sophisticated financial institutions in the United States, Wells Fargo is required by the IRS to strictly comply with its rules regarding the issuance of Form 1098 for interest received, including the 1098-E as it applies to interest received on "qualified education loans."

42. As such, while Plaintiff was repaying the Loans, if Wells Fargo received more than $600 in student loan interest on a "qualified education loan" in a given year, 26 U.S.C. 6050S required Wells Fargo, under threat of substantial penalties, to generate and send to the Plaintiff a 1098-E for him to deduct student loan interest on his tax returns.

43. Therefore, Wells Fargo was no doubt intimately aware of how to calculate what is a "qualified education loan" given the limited scope of the types of student loan debt that qualified for the student loan interest tax deduction. As such, prior to and after the Plaintiff's bankruptcy, Wells Fargo knew or should have known that as set forth in Section 221(a) (Interest on Education Loans), any interest paid on a "qualified education loan" to Wells Fargo by Plaintiff would have reported to the Plaintiff.

44. Specifically, in connection with the deduction of student loan interest, Section 221(a) states as follows:

9

(a) Allowance of deduction

> In the case of an individual, there shall be allowed as a deduction for the taxable year an amount equal to the interest paid by the taxpayer during the taxable year on any qualified education loan.

45. Given its regulatory obligations to the IRS and to borrowers to calculate and report interest paid on "qualified education loans", at some point Wells Fargo had to have conducted an analysis to determine what portion – if any – of the Plaintiff's student loan interest was paid on any "qualified education loan." As such, if the Loans were legitimate "qualified education loans", the Plaintiff would have received a 1098-E from Wells Fargo for interest paid during the years he paid more than $600 in interest.

46. Given the high rates that the loans carried, during most (if not every) year of repayment on the Loans, upon information and belief the Plaintiff did in fact pay Wells Fargo more than $600 per year in interest.

47. However, upon information and belief, Wells Fargo did not issue a 1098-E to the Plaintiff at any time – either before or after his bankruptcy.

48. As a result, Wells Fargo had already concluded that the interest from the Loans at issue paid to Wells Fargo by the Plaintiff were not for a "qualified education loan", as they did not issue the Plaintiff a 1098-E in years that he paid them more than $600 in interest.

49. If supported by evidence gathered during discovery, this fact alone is a party admission that the Loans were not "qualified education loans", and Wells Fargo is therefore estopped from taking a contrary position in this litigation.

50. As a result of the fact that Wells Fargo likely never issued the Plaintiff a 1098-E in any year where he paid more than $600 in interest on these purported "student loans," Wells Fargo knew or should have known that these loans were not "qualified education loans" both before,

during, and after the Plaintiff's bankruptcy. As a result of this actual or constructive knowledge, at all relevant times Wells Fargo knew or should have known that these private, non-qualified credit-based loans were not legitimate student loans that fell within the scope of 523(a)(8).

> **ii. Plaintiff files for relief under Title 11 and receives a discharge that extinguishes all pre-petition debt not encompassed by Section 523(a) – including the two Wells Fargo loans**

51. In March 2007, the Plaintiff filed for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Michigan. On Schedule F of his petition, Plaintiff indicated that he was indebted to "Wells Fargo" for $9,892 in educational loans. *See*, Exhibit E.

52. Despite having actual or constructive knowledge that the Loans were dischargeable private, unsecured debts, Wells Fargo did not file an adversary proceeding during the pendency of the bankruptcy seeking a non-dischargeability determination on either of the Loans.

53. Plaintiff was granted a discharge on November 29, 2007. *See*, Exhibit F. This discharge automatically and as a matter of law extinguished any education related debt that was not specifically encompassed by section 523(a)(8), including Loan Nos. 1 and 2. As a result, the Loans were discharged on November 29, 2007.

54. Instead, respecting the discharge order, Wells Fargo proceeded at its own peril and resumed its collection efforts after the Loans were discharged on November 29, 2007.

55. On July 25, 2008, Wells Fargo, filed a state court action in the 8th District Court for the County of Kalamazoo seeking a judgement on the otherwise discharged debt. Notably, this complaint failed to mention that the Plaintiff had completed a Chapter 7 bankruptcy, or that Wells Fargo had not filed an adversary proceeding to obtain a determination that the Loans were not discharged (despite actual, constructive, or inquiry notice to the contrary).

56.     Notwithstanding the fact that it was enjoined from engaging in post-discharge collection efforts on the Loans, Wells Fargo forced the Plaintiff into a consent judgment on October 23, 2008 (the "Consent Judgement").

57.     This Consent Judgment was not a judgment on the merits, and it is *void ab initio* under the Bankruptcy Code as it modified the Plaintiff's original discharge.

58.     After inducing the Plaintiff into the Consent Judgement, Wells Fargo then proceeded to collect on this discharged debt in monthly installments of $150 for the next seven years.

59.     In 2015, while Plaintiff was seeking a professional license to continue his career, he was forced to borrow $8,000 in the form of another private, unsecured loan to repay the Consent Judgement in full for the discharged debt to have it removed from his credit report.

60.     Plaintiff is still repaying this additional debt today and thus is continuing to suffer injury-in-fact resulting from Wells Fargo's actions.

61.     Plaintiff has suffered great financial harm as a direct and proximate result of the Defendant's illegal collection efforts on the Loans following their discharge in his bankruptcy. Wells Fargo was most certainly aware of the bankruptcy case, and that the actions that it took subsequent to the discharge order being entered were intentional.

62.     Furthermore, given Wells Fargo's actual and constructive knowledge of the timing of the Plaintiff's loans, the "cost of attendance" at Capella University, and the nature of the Loans it extended to the Plaintiff, Wells Fargo knew or should have known that the Loans were discharged in the Plaintiff's bankruptcy. Despite the full faith and credit normally given to state court judgments, the Consent Judgment – a Michigan state court judgment that is not on the merits – does not have any preclusive effect on this instant adversary proceeding to determine the

dischargeability of the Loans. The post-discharge Consent Judgement does not and cannot "cure" the alleged discharge violations as alleged herein.

63. As a result, Wells Fargo intentionally, willfully, and recklessly violated the discharge order previously entered by this Court. As a result, Plaintiff seeks the relief against Wells Fargo as set forth below.

## V.
## CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT

63. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64. Plaintiff requests declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Loans were discharged by operation of law on November 29, 2007 because the Loans were not a student debt protected by any subsection of section 523(a)(8).

65. In the alternative, Plaintiff requests declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the Loans are dischargeable because they are not protected by any subsection of section 523(a)(8).

## VI.
## PRAYER

In light of the foregoing, Plaintiff requests that the following relief be entered against Defendant for:

1. Declaratory relief regarding the Loans as stated above;

2. Attorneys' fees and costs; and

3. Any other such relief as the Court deems just and proper.

Dated: June 9, 2017

        Respectfully submitted,

            <u>/s/ David Ienna</u>
            **Michael Jaafar**
            **David Ienna**
            Fairmax Law PLLC
            23400 Michigan Ave, Suite 110
            Dearborn, MI 48124
            888-645-3263
            313-277-9278 (fax)

            **Austin C. Smith**
            SMITH LAW GROUP
            3 Mitchell Place
            New York, NY 10017
            917-992-2121
            austin@acsmithlawgroup.com

            **Joshua B. Kons**
            Law Offices of Joshua B. Kons, LLC
            939 West North Avenue, Suite 750
            Chicago, IL 60642
            T: 312-757-272

            **ATTORNEYS FOR PLAINTIFF**